UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MACEY E. TURLEY, Jr.,<br>CDCR #BF8128,<br><br>                                Plaintiff,<br><br>v.<br><br>C/O LAQUNAS, ASU Floor Staff Correctional Officer; Lt. HUSS, Lieutenant on B Yard; Sgt. HARRISON, Sergeant in ASU on B Yard; Sgt. KING, Sergeant in ASU on B Yard,<br>                                Defendants. | Case No.: 23cv231-LL-BLM<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2];**<br><br>**(2) SCREENING COMPLAINT PURSUANT TO 28 U.S.C. § 1915(e)(2) AND 28 U.S.C. § 1915A(b)** |

Macey E. Turley, Jr. ("Turley" or "Plaintiff"), currently incarcerated at California State Prison, Corcoran ("CSP-COR"), is proceeding pro se with a civil rights complaint pursuant to 42 U.S.C. § 1983. *See* Compl., ECF No. 1. He has also filed a Motion to Proceed in Forma Paupers ("IFP"). ECF No. 2.

**I.    Motion to Proceed IFP**

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of

$402.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if she is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 85 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1), (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 577 U.S. at 85.

In support of his IFP Motion, Turley has submitted a certified copy of his trust account statement pursuant to 28 U.S.C. § 1915(a)(2) and S.D. Cal. Civ. L.R. 3.2. *See* ECF No. 2 at 4; *Andrews*, 398 F.3d at 1119. The trust account statement shows that Turley has

---

[1] In civil actions except for applications for a writ of habeas corpus, civil litigants bringing suit must pay the $350 statutory fee in addition to a $52 administrative fee. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020). The $52 administrative fee does not apply to persons granted leave to proceed IFP, however. *Id*.

an available balance of $3.03. *See id*. at 4. Therefore, the Court **GRANTS** Turley's Motion to Proceed IFP (ECF No. 2), declines to exact the initial filing fee because his trust account statement indicates he may have "no means to pay it," *Bruce*, 577 U.S. at 85, and directs the Secretary of the California Department of Corrections and Rehabilitation ("CDCR") or his designee, to instead collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1) and forward them to the Clerk of the Court. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee"). *Bruce*, 577 U.S. at 85; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered").

## II. Screening Pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)

### A. Legal Standard

Because Turley is a prisoner, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir.

2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id*.; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

B.   <u>Plaintiff's Factual Allegations</u>

The events recounted in the Complaint are alleged to have occurred while Turley was incarcerated at R.J. Donovan State Prison ("RJD"). Compl., ECF No. 2–4. Turley claims he asked Defendants Harrison, King, and Huss for "legal access to the court or to make a legal call to find out what was going on with [a] custody hearing" involving his daughter. *Id*. at 7. According to Turley, his failure to appear at the July 14, 2022 hearing

caused him to lose custody of his daughter and he "tried to take [his] own life over it." *Id.* at 6–7.

On August 4, 2022, Turley alleges he told Defendant Laqunas he needed medical help for stomach pain and Laqunas told him he would contact the nurse after he finished the count. *Id.* at 1. A nurse arrived thirty minutes later to dispense medication. *Id.* When Turley expressed frustration at the slowness of the nurse's response, telling the nurse it was an emergency and that he needed help, Turley claims the nurse explained he had not been told about Turley's request for medical help. *Id.* When Laqunas later walked by Turley's cell, Turley claims he called him a "f-ing liar" and "got a razor [he] had in the cell and told him [he] was going to cut himself if he didn't help me.[2]" *Id.* at 1, 7. Turley claims Laqunas then turned his head and walked away. *Id.* Turley then started cutting himself with the razor. *Id.* According to Turley, a different correctional officer walked by and saw Turley cutting himself, called a code, and told Turley to give him the razor and he would help him. *Id.*

Although it is not clear from the Complaint what happened next, Turley alleges that on August 6, 2022, he told Harrison, King, and Huss he "want[ed] to sit down in a peaceful protest," but they "jumped" on him and used excessive force against him. *Id.* at 5–7.

    C.    <u>Discussion</u>

        1.    <u>Defendant Laqunas</u>

The Eighth Amendment requires that inmates have "ready access to adequate medical care," *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), and "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A prison official acts with 'deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting

---

[2] Turley also states he "may [have] said I was gonna cut him too." Compl., ECF No. 1 at 7.

*Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Turley has not sufficiently alleged that Laqunas knew he was at "substantial risk of serious harm" and that he actually drew that inference. *Id.* "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment . . . .'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). But "[i]nadvertent failures to provide adequate medical care, mere negligence or medical malpractice, delays in providing care (without more) . . . are all insufficient to constitute an Eighth Amendment violation." *Norvell v. Roberts*, No. 20-cv-0512 JLS (NLS), 2020 WL 4464454, at *4 (S.D. Cal. Aug. 4, 2020) (citing *Estelle*, 429 U.S. at 105–07); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Turley's allegation that Laqunas did not alert the nurse to his stomach pain, is, at most, "mere negligence" or a "delay[] in providing care," which is not enough to plausibly allege an Eighth Amendment violation. *Id.*; *Iqbal*, 556 U.S. at 678.

Turley's allegation regarding his suicide attempt, on the other hand, is sufficient to plausibly allege an Eighth Amendment violation. *Iqbal*, 556 U.S. at 678. "A heightened suicide risk or an attempted suicide is a serious medical need." *Conn v. City of Reno*, 591 F.3d 1081, 1095 (9th Cir. 2010), *vacated*, 563 U.S. 915 (2011), *opinion reinstated in relevant part*, 658 F.3d 897 (9th Cir. 2011) (citing *Farmer*, 511 U.S. at 837; *Kamakeeaina v. City & Cty. of Honolulu*, No. 11-cv-00770 JMS, 2014 WL 1691611, at *7 (D. Haw. Apr. 29, 2014), affirmed sub nom. *Kamakeeaina v. Maalo*, 680 F. App'x 631 (9th Cir. 2017) (finding statements that plaintiff was "ready to commit suicide" were sufficient to show serious medical need).) Turley alleges he showed Laqunas a razor and told him he was going to cut himself; Laqunas ignored him and walked away. Compl., ECF No. 1 at 1, 7. Turley then began cutting himself. *Id.* at 7. When another correctional officer walked by,

Turley cut himself in front of him and the officer called a code. *Id.* These allegations show Laqunas "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety." *Toguchi*, 391 F.3d at 1057.

### 2. Defendants Harrison, King, and Huss

Turley alleges Defendants Harrison, King, and Huss denied him access to the courts when they refused to permit him to make a phone call to learn the status of a child custody hearing he was involved in and denied him timely access to his legal materials. Compl., ECF No. 1 at 6–7. According to Turley, this caused him to lose custody of his child. *Id.*

Prisoners have a First Amendment right of access to the courts which guarantees them the "capability of bringing contemplated challenges to sentences or conditions of confinement before the courts," and "prison officials may not actively interfere with a plaintiff's right to litigate." *Lewis v. Casey*, 518 U.S. 343, 346, 356 (1996); *Reagor v. Sutton*, No. 1:17-cv-01398-LJO-BAM (PC) 2018 WL 3031514, at *2 (E.D. Cal. June 15, 2018) (citing *Lewis*, 518 U.S. at 346). Claims for denial of access to court may arise from the frustration or hindrance of "a litigating opportunity yet to be gained," or from the loss of a suit that cannot now be tried. *Christopher v. Harbury*, 536 U.S. 403, 412–15 (2002); *see Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011) (differentiating "between two types of access to court claims: those involving prisoners' right to affirmative assistance and those involving prisoners' rights to litigate without active interference"), *overruled on other grounds by Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015).

The right is limited, however, to the filing of direct criminal appeals, habeas petitions, and civil rights actions. *Lewis*, 518 U.S. at 354. It does "not create an abstract, freestanding right to . . . legal assistance," *id*. at 351, and does not "guarantee inmates the wherewithal to transform themselves into litigating engines." *Id*. at 355. The threshold requirement for any claim based on the denial of access to court is the allegation of an "actual injury." *See Lewis*, 518 U.S. at 351–53; *Silva*, 658 F.3d at 1104. "[A]ctual injury" is defined as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348; *see*

*Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury as the "inability to file a complaint or defend against a charge").

Turley's allegations do not plausibly allege a First Amendment access to courts claim because he has not alleged Harrison, King, or Huss prevented him from filing documents or accessing court proceedings in his criminal appeal, habeas petition, or civil rights action. *Lewis*, 518 U.S at 354–55; *see also O'Neal v. San Bernardino Cnty. Sheriff's Dept.*, No. EDCV 11-803-DDP (MAN), 2011 WL 2883278, at *4 (C.D. Cal. July 19, 2011) ("The right of access [to courts] does not extend to child custody cases.") (quoting *Aguilar v. Lopez*, No. C 96-3147 SI, 1996 WL 557679, at *2 (N.D. Cal. Sept. 16, 1996)). Further, Turley's allegations do not plausibly allege an actual injury from any purported denial of access to courts because he has not alleged he would have been able to participate in the custody hearing without the interference of Harrison, King, or Huss, or that had been able to participate in the hearing, he would have been awarded custody of his child. *Lewis*, 518 U.S. at 348; *Iqbal*, 556 U.S. at 678.

Turley also claims Harrison, King, and Huss used excessive force against him on August 6, 2022 by "jumping" on him despite him telling them he was going to "s[i]t down in a peaceful protest." Compl., ECF No. 1 at 6–7. Unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). In the context of prison officials who are alleged to have used excessive physical force in violation of the Eighth Amendment, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6–7; *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (citing *Hudson*, 503 U.S. at 7) (internal quotation marks omitted); *see also Carrasco v. Cababe*, No. 1:19-cv-00724-LJO-JDP, 2019 WL 6170118, at *2 (E.D. Cal. Nov. 20, 2019) (finding allegations that defendants beat plaintiff without justification while he was restrained sufficient to state an excessive force claim); *Lees v. Singsong*, No. 19-cv-01603-HSG, 2021 WL 1925728, at *2 (N.D. Cal. 2021) (same).

Turley has not alleged sufficient facts to plausibly allege any force applied by Harrison, King, and Huss was not "a good-faith effort to maintain or restore discipline," but rather was inflicted "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7. Turley includes no details regarding the incident, such as what actions Harrison, King, and Huss took and how they were excessive or unnecessary, nor has he explained how those actions were taken for the purpose of causing him harm. *Id.* In addition, Turley has not alleged he was harmed in any way by the actions of Harrison, King, and Huss. *See Hudson*, 503 U.S. at 9–10 ("[T]he Eighth Amendment's prohibition of 'cruel and unusual punishments necessarily excludes from constitutional recognition *de minimus* uses of physical force.") Turley has not provided sufficient factual detail to state a plausible claim for relief pursuant to § 1983. *Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

## IV.   Conclusion and Order

Based on the foregoing, the Court:

1)   **GRANTS** Plaintiff's Motion to Proceed In Forma Pauperis (ECF No. 2);

2)   **ORDERS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO HIS ACTION;

3)   **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Jeff Macomber, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001, or in the alternative by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov;

4)   **DISMISSES** Plaintiff's First Amendment access to courts and his Eighth Amendment excessive force claims against Defendants Harrison, King, and Huss sua

sponte for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

5) **DISMISSES** Plaintiff's Eighth Amendment medical care claim regarding his stomach pain against Defendant Laqunas sua sponte for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

6) **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order, in other words, by **Thursday, May 25, 2023**, in which to either: (1) file a Notice of Intent to Proceed with his Eighth Amendment claim against Defendant Laqunas only; or (2) file an Amended Complaint correcting all the deficiencies of pleading identified by the Court in this Order.

If Plaintiff chooses to proceed with his Eighth Amendment claim regarding his suicide attempt against Defendant Laqunas only, the Court will issue an Order directing the U.S. Marshal to effect service of his Complaint on Defendant Laqunas and dismiss the remaining First and Eighth Amendment claims against Defendants Laqunas, Harrison, King, and Huss.

If Plaintiff chooses to file an amended pleading correcting the deficiencies outlined in this Order, his Amended Complaint must be complete in itself without reference to his original pleading. Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc.*, 896 F.2d at 1546 ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled."). Plaintiff's Amended Complaint must be entitled as his "First Amended Complaint," contain S.D. Cal. Civil Case No. 22-cv-01801-BAS-WVG in its caption, and comply both with Fed. R. Civ. P. 8 and with S.D. Cal. CivLR 8.2.a.

\\\
\\\
\\\

\\\

In order to assist Plaintiff in complying with these requirements, the Court further **DIRECTS** the Clerk of the Court to provide Plaintiff with a blank copy of its form Complaint under the Civil Rights Act, 42 U.S.C. § 1983 for his use should he choose to amend.

**IT IS SO ORDERED**.

Dated:  April 10, 2023

_____
Honorable Linda Lopez
United States District Judge