UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MACEY E. TURLEY, JR.,<br><br>                              Plaintiff,<br><br>v.<br><br>LAQUNAS, Correctional Officer,<br><br>                              Defendant. | Case No.: 23CV0231-LL (BLM)<br><br>**REPORT AND RECOMMENDATION FOR AN ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 22]** |

This Report and Recommendation is submitted to United States District Judge Linda Lopez pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(c) and 72.3(f) of the United States District Court for the Southern District of California.  For the following reasons, the Court **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED**.

## PROCEDURAL BACKGROUND

On February 3, 2023, Macey E. Turley, Jr. ("Plaintiff" or "Turley"), a state prisoner currently incarcerated at California State Prison located in Sacramento, California, proceeding pro se filed a Complaint pursuant to 42 U.S.C. § 1983 against Defendants Laqunas, Huss, Harrison, and King. ECF No. 1. ("Compl.")

On April 10, 2023, District Judge Lopez screened Plaintiff's Complaint before service as required by 28 U.S.C. § 1915(e)(2) & § 1915A(b). ECF No. 3. The District Court dismissed all of Plaintiff's claims against Defendants Harrison, King, and Huss for failing to state a claim upon which relief could be granted. Id. at 7-9.[1] The District Court also dismissed the Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim relating to his stomach issues against Defendant Laqunas. Id. at 5-6. However, the District Court found that Plaintiff's Eighth Amendment deliberate indifference to a serious medical need arising from his alleged suicide attempt as to Defendant Laqunas sufficient state a plausible claim. Id. at 6-7.

Plaintiff was given the option to proceed as to the remaining Eighth Amendment claim against Defendant Laqunas only or file an amended complaint to correct the deficiencies of pleading identified in the District Court's Order. Id. at 10. Plaintiff was informed that if he chose the first option, the District Court would issue an Order directing the U.S. Marshal to effect service of his Complaint on Defendant Laqunas and dismiss the remaining First and Eighth Amendment claims against Defendants Laqunas, Harrison, King, and Huss. Id. Plaintiff filed a "Notice of Intent to Proceed with his Eighth Amendment claim against Defendant Laqunas only." ECF No. 4. Based on Plaintiff's choice, the Court dismissed Defendants Harrison, King, and Huss from the action and directed the US Marshal to effect service of the remaining Eighth Amendment claim against Defendant Laqunas. ECF No. 5. Defendant Laqunas filed his Answer on August 4, 2023. ECF No. 8.

On July 12, 2024, Defendant Laqunas ("Defendant" or "Laqunas") filed a Motion for Summary Judgment ("MSJ") pursuant to Fed. R. Civ. P. 56, along with the declarations of F. Laqunas ("Laqunas Decl.") and S. Gray Gilmore ("Gilmore Decl.") in support of his motion. ECF Nos. 22, 22-3, 22-4. On July 15, 2024, the Court notified Plaintiff of the requirements for opposing summary judgment pursuant to Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988)

---

[1] Throughout this Order and for ease of consistency and reference, the Court will cite to each document in the record using both the number assigned to the document and the page number automatically generated by its Case Management/Electronic Case File system ("ECF").

and Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc), and set a briefing schedule. ECF No. 23. Plaintiff was directed to file either his Opposition or a "Notice of Non-Opposition" by September 9, 2024. ECF No. 23 at 2. Plaintiff did not file any response, therefore Defendant's motion for summary judgment is unopposed.

## FACTUAL BACKGROUND

### A.  Plaintiff's Claims[2]

The events recounted in the Complaint are alleged to have occurred while Turley was incarcerated at R.J. Donovan State Prison ("RJD"). ECF No. 1. On August 4, 2022, Turley alleges he told Defendant Laqunas he needed medical help for stomach pain and Laqunas told him he would contact the nurse after he finished the count. Id. at 1. A nurse arrived thirty minutes later to dispense medication. Id. When Turley expressed frustration at the slowness of the nurse's response, telling the nurse it was an emergency and that he needed help, Turley claims the nurse explained he had not been told about Turley's request for medical help. Id. When Laqunas later walked by Turley's cell, Turley claims Laqunas called him a "f-ing liar" and "got a razor [he] had in the cell and told him [he] was going to cut himself if he didn't help me." Id. at 1, 7. Turley claims Laqunas turned his head and walked away. Id. Turley then started cutting himself with the razor. Id. According to Turley, a different correctional officer walked by and saw Turley cutting himself, called a code, and told Turley to give him the razor and he would help him. Id.

### B.  Defendant's Claims and Evidence

Laqunas held the position of correctional officer at RJD and was assigned as a floor officer two to three days a week in Building 6, Unit B in August of 2022. Laqunas Decl. at ¶¶ 1-2.

---

[2] Plaintiff's Complaint is not verified under penalty of perjury. See ECF No. 1. Therefore, Plaintiff's Complaint may not be used as an opposing affidavit to the Defendant's Motion but the Court sets forth the factual allegations found in his Complaint relating to the claims that remain after Judge Lopez's screening order because they are relevant to the defenses raised in the Defendant's motion. See Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir.1995) (holding that a complaint or motion duly verified under penalty of perjury pursuant to 28 U.S.C. § 1746 may be used as an opposing affidavit under Fed. R. Civ. P. 56.); accord Norwood v. Woodford, 661 F. Supp. 2d 1148, 1151 (S.D. Cal. 2009).

Turley was housed in the Administrative Segregation Unit ("ASU") in Building 6, Unit B on August 4, 2022. Gilmore Decl., Ex. B., Plaintiff's Deposition ("Pl.'s Depo."), ECF No. 22-3 at 20:4-5. Turley had been housed in the ASU for approximately eight weeks on August 4, 2022. Id. at 20:9-11.

On August 3, 2022, Turley reported "[suicidal ideation] to CO Fernandez." Gilmore Decl., Ex. A. Mental Health Consult Progress Note dated Aug. 3, 2022. Turley was evaluated by Psychiatrist Intern D. Enfield who reported Turley "denied [suicidal ideation] and indicated he only reported [suicidal ideation] due to having a headache, stomach pain, and finding out he was COVID positive." Id. He further noted that Turley reported he "wanted to discuss these things with medical but was not receiving the medical [treatment] he wanted at the speed he wanted." Id. Enfield determined Turley "did not present in acute psychiatric distress, and during the session was not deemed a current risk of harm to self or others, nor gravely disabled." Id. Turley "denied current suicidal or homicidal ideation." Id. Enfield assessed Turley's chronic risk as "moderate" because he had "previously endorsed three lifetime suicide attempts but has been inconsistent and vague in reports," declined to provide details on past attempts, and had no "verified suicide attempts on file." Id. Enfield assessed Turley's acute risk as low because Turley "deni[ed] suicidal ideation/intent/plan" and reported that he only "stated [suicidal ideation] to be able to speak with medical." Id.

On August 4, 2022, approximately nine hours before the events that gave rise to this action, Turley reported suicidal ideation "due to not being able to go to [recreational yard]." Id., Mental Health Consult Progress Note dated Aug. 4, 2022. It was documented that Turley was unable to go to the yard "due to being COVID positive and on isolation" until August 8, 2022. Id. He was examined by Psychologist J. Roos who explained to him that staff was only refusing to allow him to go to the yard because he was COVID positive and had to remain isolated for a few more days. Id. Turley was "not receptive to this feedback, became agitated" but he "did not endorse a plan or intent for [suicidal ideation]." Id. Dr. Roos opined that Turley appeared to have "reported [suicidal ideation] to get other needs met." Id. Turley made additional "conditional threats to continue to report [suicidal ideation] until he gets his yard." Id. Dr. Roos

also assessed Turley's acute risk as low because Turley "did not express intent or plan to harm himself." Id. at 8. He further found that Turley "did not meet requirements for a [higher level of care], nor did he present with any imminent risk factors of [suicidal ideation that would warrant a [higher level of care]." Id.

Later that same day, sometime between 4:00 p.m. and 5:00 p.m., Turley's "stomach started hurting" and a "couple minutes" later Laqunas came by Turley's cell on a "welfare check." Pl.'s Depo. at 22:4-8. Turley told Laqunas that his "stomach was killing [him]." Id. at 22:8-9. Turley told Laqunas that he needed a "man down" which was a term used to summon someone from the medical staff. Id. at 22:21-24, 23:2-3. Laqunas responded that he would call for someone from medical after he was through finishing the count. Id. at 23:15-16. Turley did not tell Laqunas that he was having "suicidal thoughts" nor that he was feeling suicidal at that time. Id. at 23:20-25.

A nurse came by Turley's cell approximately thirty minutes after his first encounter with Laqunas. Id. at 24:15-18. The nurse was there to pass medication to other inmates and no one had told this nurse about Turley's need for medical attention. Id. at 24:19-20, 25:2-3. The nurse told Turley that he would come back to his cell after he was done passing out medication. Id. at 25:7-9. Approximately five minutes later, Laqunas walked by Turley's cell and Turley asked him "why did you lie to me" when Laqunas had previously told him that he would contact medical for him. Id. at 26:6-7. Laqunas just "smiled at [Turley]" and "put up his thumb, like, saying, okay, yeah, or whatever." Id. at 26:8-11.

Laqunas came by Turley's cell a third time and Turley "pressed" a razor to his window so Laqunas "could see it." Id. at 26:1. However, Laqunas "act[ed] like he didn't see it, so he kept on walking." Id. at 26:2. Turley also stated to Laqunas before he walked away "so you think I'm playing? You think this is a game?" but Laqunas "laughed at him and kept on walking." Id. at 27:3-5. After Laqunas "kept on walking," Turley said "all right, watch," and told Laqunas that he was going to "cut on myself." Id. at 27:5-7.

Approximately five minutes after Laqunas had walked away, Turley "started cutting" himself and when another correctional officer came by for other reasons, Turley showed him

the cuts which caused this officer to "call code" on Turley. Id. at 27:12-17. Turley cut himself on the outside of his arm and above the wrist area. Id. at 28:1-4. Turley "broke the skin" but he "wasn't trying to, like, cut a vein." Id. at 29:4-6. Turley testified he was trying to "harm himself" but he "wasn't trying to kill [himself]." Id. at 29:7-9. After Turley cut himself, he flushed the razor down the toilet in his cell. Id. at 29:22-24.

Turley was examined by nurses who cleaned the blood off of his arm and they "wrapped it up." Id. at 31:11-14. Turley's stomach pain returned and he was given Milk of Magnesia and he did not experience any further stomach pain that night. Id. at 31:23-25; 34:3-9.. He had no more thoughts of cutting himself. Id. 32:1-4. While Plaintiff was being provided medical attention, a sergeant asked Turley why he cut himself and as Laqunas came by during that questioning, Turley, instead of responding directly to the sergeant, turned and said to Laqunas "[y]ou know why, I showed you the razor." However, Laqunas responded "[n]o, you didn't." Id. at 32:11-14.

Turley was then taken to the Correctional Treatment Center ("CTR") for a mental health evaluation. Id. at 33:1-2. Turley attests that he was a "little bit [suicidal], yeah a little bit, but not really because I was kind of mad and frustrated that I – that they took so long to give me medical treatment. But, you know, I got over it." Id. at 33:17-21.

While at the CTR Turley was examined by Psychologist R. Jakobczuk who noted that Turley made a "superficial scratch to his arm because he was wanting medical attention and felt like no one was paying attention and he felt ignored." Gilmore Decl., Ex. A, ECF No. 22-3 at 9. Dr. Jakobzcuk also wrote that Turley "stated that he knew if he engaged in [suicidal ideation behavior] and reported [suicidal ideation] he would be seen immediately." Id. He also made the assessment that Turley had "NO intent to die." Id. (emphasis in original). He wrote "[b]ased on the information stated above, this incident was deemed NOT a suicide attempt" and told Turley "not to report [suicidal ideation] to get attention as this was a misuse of medical services and may result in a [Rules Violation Report] for malingering." Id.

Turley was asked if he had another cutting incident the following day but he denied that he did and instead testifies that he "swallowed" a razor on August 5, 2022. Pl.'s depo., ECF No.

34:21-25. Turley was examined by M. Lewis, an "unlicensed Psychologist," who stated that Turley "reported [suicidal ideation] and an intent to 'swallow razors' for secondary gain to obtain a phone call and his property." Gilmore Decl., Ex. A, Mental Health Consult Progress Note dated Aug. 7, 2022, ECF No. 22-3 at 13. Turley was returned to his housing unit after it was noted that he "recanted" his claims of suicidal ideation stating he "only engaged in [suicidal ideation behavior] and reported [suicidal ideation] to get a phone call." Id. at 14.

Laqunas attests that on the evening of August 4, 2022, he "did not believe Plaintiff was suicidal or at risk of serious harm." Laqunas Decl. at ¶ 3. Other staff members had informed Laqunas that "Plaintiff regularly claimed suicidal ideation to extract concessions from custody staff." Id. He was further "aware that, despite Plaintiff's previous claims of suicidal ideation, Plaintiff was returned to his cell after the previous incidents were resolved." Id. at ¶ 4. As a result, Laqunas "believed Plaintiff was not at risk of suicide" because he believed that it was "illogical for Plaintiff to threaten to kill himself in order to receive faster medical attention for alleged stomach pain." Id. at ¶ 5.

## **LEGAL STANDARDS**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it "might affect the outcome of the suit." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The initial burden of establishing the absence of any genuine issues of material fact falls on the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. See id. at 322–23. In such cases, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

Once the moving party has satisfied its initial burden, the non-moving party cannot rest

7

23CV0231-LL (BLM)

on the mere allegations or denials of its pleading. The non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. The non-moving party may meet this requirement by presenting evidence from which a reasonable jury could find in its favor, viewing the record as a whole, in light of the evidentiary burden the law places on that party. See Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221–22 (9th Cir. 1995). In determining whether there are any genuine issues of material fact, the court must "view[] the evidence in the light most favorable to the nonmoving party." Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001) (citation omitted).

## DISCUSSION

Laqunas seeks summary judgment with respect to Turley's Eighth Amendment deliberate indifference to serious mental health needs claim because evidence in the record demonstrates that Turley did not suffer from a serious mental health need. Laguna further contends even if Turley could show such a need, Laqunas was not deliberately indifferent to this need because there is no evidence that Turley was actually suicidal or a danger to himself or others. MSJ at 15-20.

Alternatively, Laqunas claims he is entitled to qualified immunity because "it is not clearly established that a reasonable correctional officer needed to summon medical care within 15 minutes for an inmate who was not at a heightened risk of suicide." Id. at 27.

    **A.**    **Eighth Amendment Inadequate Mental Health Care Claims**

          1.    Standard of Review

The government has an "obligation to provide medical care for those whom it is punishing by incarceration," and a failure to meet that obligation can violate the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 103–05 (1976). In order to prevail on an Eighth Amendment claim for inadequate medical care, however, a prisoner must show "deliberate indifference" to his "serious medical needs." Id. at 104. This includes "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard— deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part

on other grounds by Peralta v. Dillard, 744 F.3d 1076 (9th Cir. 2014) (en banc).

To meet the Eighth Amendment's objective requirements, the prisoner must demonstrate the existence of a serious medical need. Estelle, 429 U.S. at 104. A sufficiently serious need exists if failure to treat his injury or condition "could result in further significant injury" or cause "the unnecessary and wanton infliction of pain." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks omitted) (citing McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled in part on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc)). "A heightened suicide risk or an attempted suicide risk is a serious medical need." Conn v. City of Reno, 591 F.3d 1081, 1095 (9th Cir. 2010), vacated, 563 U.S. 915 (2011), opinion reinstated in relevant part, 658 F.3d 897 (9th Cir. 2011).

To meet the Eighth Amendment's subjective requirement of deliberate indifference, a "high legal standard," a prisoner must demonstrate the defendant "kn[e]w[] of and disregard[ed] an excessive risk to [his] health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057, 1060 (9th Cir. 2004) (internal quotation marks and citation omitted). This "requires more than ordinary lack of due care." Farmer v. Brennan, 511 U.S. 825, 835, (1994) (internal quotation marks omitted) (citing Whitley v. Albers, 475 U.S. 312, 319 (1986)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988).

2. Analysis

First, the Court must consider whether Turley suffered from a serious mental health need, the objective requirement that must be shown to prevail on an Eighth Amendment claim. Laqunas argues that there is no evidence in the record to demonstrate that Turley had a heightened suicide risk or that he ever actually attempted suicide and therefore, he cannot show that he suffered from a serious mental health need. MSJ at 17-21 (citing Conn, 591 F.3d at 1095).

Laqunas contends that the evidence in the record demonstrates that Turley's threats of suicidal ideation "were manipulative tactics to extract concessions from custody staff." Id. at 17. Laqunas has submitted Turley's medical records from the day prior to the alleged suicide attempt to the day following that incident. Gilmore Decl., Ex. A.  The records show that on August 3, 2022, approximately twenty-six hours prior to the incident giving rise to this action, Turley was given a mental health assessment after he told a correctional officer that he was experiencing suicidal ideation. Id. at 4.  The medical record reflects that Turley admitted that he "only reported [suicidal ideation] because he was having physical ailments for which he believed that if he reported suicidal ideation, he would get faster medical treatment." Id.  This medical record also notes that Turley had no "verified suicide attempts on file." Id. Turley was found to not be a "current risk of harm to self or others." Id.

The following day, approximately nine hours before the events giving rise to this action, Turley again claimed he was suffering from suicidal ideation, although he subsequently admitted what he really wanted was to "go to [recreational therapy] yard." Id. at 7.  Turley was given a mental health assessment and it was found that he did "not endorse a plan or intent for [suicidal ideation] and appears that he reported it to get other needs met." Id.  He was found to not "present with any imminent risk factors of [suicidal ideation] that would warrant a [higher level of care]." Id.

Turley testified that on the evening of August 4, 2022, during the event at issue in this case, Turley was experiencing stomach pain and told Laqunas that he needed him to call medical so that Turley could be examined.  Pl.'s Depo at 22:1-24.  Turley admitted that he was not feeling suicidal during the first encounter with Laqunas. Id. at 23:24-25.  Turley testified that during the last encounter he had with Laqunas that evening, Turley showed Laqunas a razor and said "I'm going to cut on myself" but Laqunas "laughed at him and kept on walking." Id. at 26:19-21; 27:4-7.   It is undisputed that approximately five minutes later, Turley did cut his outer right arm with the razor. Id. at 27:12-24.  However, Turley testified that he "wasn't trying to, like, cut a vein, but I was cutting on myself to show them, I'm not playing." Id. at 29:4-6. Turley admitted he "wasn't trying to kill myself." Id. at 29:9.

Turley was given another medical and mental health assessment following this cutting behavior. Gilmore Decl., Ex. A at 9. His injury was described as a "superficial scratch to his arm" and he told the psychologist assessing him that he "was wanting medical attention and felt like no one was paying attention and he was ignored." Id. Turley stated that he "knew if he engaged in [suicidal ideation behavior] and reported [suicidal ideation] he would be seen immediately." Id. When assessed for suicidal ideation behavior, Turley was found to have "no intent to die" and the incident with regard to him cutting himself with a razor was deemed "NOT a suicide attempt." Id. (emphasis in original.) Turley offers no evidence to dispute this showing that he alleged mental health issues, including stating suicidal ideations and related behaviors, in order to receive faster medical attention for unrelated physical ailments and access to the recreation yard. There is no evidence in the record that Turley ever intended to kill himself.

After reviewing the evidence in the record, the Court finds there is no evidence indicating there was a heightened risk of Turley committing suicide or attempting to commit suicide and therefore, there is no triable issue of material fact with regard to whether Turley had a serious mental health need. Conn, 591 F.3d at 1095. Accordingly, Plaintiff has the objective requirement of a serious medical need.

Even if the Court were to assume that there was an objectively serious risk of Turley committing suicide or attempting to commit suicide, no triable issue of fact exists to show Laqunas acted with deliberate indifference to Turley's serious mental health needs. "To demonstrate the second prong—deliberate indifference—[P]laintiff[ ] must show that [Laqunas] w[as] (a) *subjectively aware* of the serious medical need and (b) failed to adequately respond." Id. at 1096 (emphasis in original). Laqunas attests that he "did not believe [Turley] was suicidal" because he had been informed that Turley "regularly claimed suicidal ideation to extract concessions from custody staff." Laqunas Decl. ¶ 3. Laqunas also attests that he did not believe Turley would attempt suicide because it was "illogical for [Turley] to threaten to kill himself in order to receive faster medical attention for alleged stomach pain." Id. at ¶ 5. The evidence in the record supports the reasonableness of Laqunas' belief as it shows that correctional staff was aware that Turley falsely claimed suicidal ideation in order to get other needs met and Turley

does not offer any evidence to dispute Laqunas' showing that he genuinely believed that Turley was not a threat to himself or others. Laqunas has made a showing, that is not disputed by Turley, that he could not have consciously disregarded an excessive risk to Turley's mental health because he did not believe that Turley was serious about attempting suicide. In fact, Turley admits in his deposition that he never tried to kill himself nor was he suicidal when he interacted with Laqunas.

In addition, to the extent that Turley suggests that Laqunas was deliberately indifferent because he purportedly delayed, or interfered with, his mental health treatment, he must provide evidence that the delay lead to "further significant injury." Jett v. Penne, 439 F.3d 1091, 1096 (9th Cir. 2006); see also Kamakeeaina v. City & Cnty. of Honolulu, 2014 WL 1691611, at *9 (D. Haw. Apr. 29, 2014), aff'd sub nom. Kamakeeaina v. Maalo, 680 F.App'x 631 (9th Cir. 2017) (Finding no Eighth Amendment deliberate indifference where plaintiff said he was "ready to commit suicide," but did not attempt suicide while in defendants' custody). Here, Turley acknowledges that he made superficial cuts on his arm but there is no evidence of a suicide attempt or that there was a significant delay in providing him mental health treatment.

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Therefore, the Court finds that the record fails to present a triable issue of fact as to Turley's Eighth Amendment claims against Laqunas for deliberate indifference to Turley's serious mental health needs. Accordingly, the Court RECOMMENDS GRANTING Defendant Laqunas' motion for summary judgment.

### B.     Qualified Immunity

Alternatively, Laqunas moves for summary judgment on the ground that he is entitled to qualified immunity as to Turley's Eighth Amendment claims. On summary judgment, courts generally resolve questions of qualified immunity through a two-pronged inquiry. Tolan v. Cotton, 572 U.S. 650, 655 (2014). The first prong "asks whether the facts, '[t]aken in light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right[.]'" Id. (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). The second prong "asks

whether the right in question was 'clearly established' at the time of the violation." *Id.* at 656 (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)); see also Sharp v. Cnty. of Orange, 871 F.3d 901, 909 (9th Cir. 2016). The court is not required to address the prongs in any particular order. See Pearson v. Callahan, 555 U.S. 223, 236 (2009) ("[T]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

In this matter, with respect to Turley's Eighth Amendment claims, where "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201; County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998) ("[The better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all.").

Here, the Court does not need to decide the issue of qualified immunity because the Court is recommending summary judgment in favor of Laqunas on the ground that there is no genuine dispute with regard to Turley's Eighth Amendment claims against Laqunas.

## SUA SPONTE SCREENING

The Court also recommends that Turley's Eighth Amendment allegations that Laqunas was deliberately indifferent to his stomach pains be dismissed pursuant to pursuant to 28 U.S.C. § 1915(e)(2)(B). Under this statute, the Court must sua sponte dismiss "at any time" a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. See Lopez v. Smith, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)).

In this matter, the District Court dismissed these claims in the original screening Order. See ECF No. 3 at 6 ("Turley's allegation that Laqunas did not alert the nurse to his stomach pain, is, at most, "mere negligence" or a "delay[] in providing care," which is not enough to plausibly allege an Eighth Amendment violation.") As set forth above, Turley was given the option to attempt to amend this claim or proceed with his Eighth Amendment "regarding his suicide

attempt against Defendant Laqunas only." Id. at 10.  Turley chose the second option and did not seek leave to amend this claim to correct the deficiencies identified in the District Court's Order. However, the District Court's subsequent order dismissing the claims previously found deficient and serving the remaining claim in the Complaint on Laqunas did not dismiss the Eighth Amendment medical care claim. See ECF No. 5.

It is clear that the District Court intended to dismiss these claims and Turley made no attempt to correct the deficiencies found in the District Court's Order.  Therefore, it is recommended that the Eighth Amendment deliberate indifference to a serious medical need related to Turley's stomach pain against Laqunas be dismissed for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) for reasons set forth in the District Court's April 28, 2023 Order.  Moreover,  it is recommended that the District Court find that granting further leave to amend this claim would be futile in this matter. See Gonzalez v. Planned Parenthood, 759, F.3d 1112, 1116 (9th Cir. 2014) ("'Futility of amendment can, by itself, justify the denial of . . . leave to amend.'") (quoting Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995)).

## CONCLUSION AND RECOMMENDATION

For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an order: (1)  approving and adopting this Report and Recommendation, (2) granting Defendant's motion for summary judgment; and (3) dismissing Plaintiff's Eighth Amendment deliberate indifference to serious medical need against Defendant pursuant to 28 U.S.C. § 1915(e)(2)(B) without leave to amend.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than November 12, 2024**. The document should be captioned "Objections to Report and Recommendation."

/ / /

/ / /

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than November 26, 2024**.  The parties are advised that failure to file objections within the specified time may waive the right to raise these objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED**.

Dated: 10/15/2024

Hon. Barbara L. Major
United States Magistrate Judge